IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02308-PAB

NANCY MILLER,

       Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Nancy Miller on September 10, 2018.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I.  BACKGROUND

On March 30, 2015, plaintiff applied for social security benefits under Title II of the Act.  R. at 85.  Plaintiff alleged a disability onset date of December 30, 2011.  *Id.* After her claims were initially denied on June 26, 2015, plaintiff requested a hearing

_____

[1] On June 4, 2019, Mr. Saul was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul will be substituted as defendant for Nancy A. Berryhill, former Acting Commissioner of Social Security.

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

before an administrative law judge ("ALJ").  R. at 108.  A hearing was scheduled for December 13, 2016, but was cancelled because plaintiff had a seizure.  R. at 74, 80.  A telephone hearing was held on February 1, 2017.  R. at 35.  While plaintiff was testifying, she began to have a seizure and was unable to testify for a certain period of time.  R. at 48.  The hearing continued, and the ALJ heard testimony from plaintiff's friend and an impartial vocational expert.  R. at 53, 49.  At the hearing, plaintiff amended her alleged disability onset date to two distinct periods of disability: from December 30, 2011 until January 1, 2014, when she "recovered somewhat," and from January 1, 2015 onward.  R. at 41.

On June 21, 2017, the ALJ issued a decision denying plaintiff's claim.  R. at 12. The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2020.  R. at 17.  She further found that plaintiff had engaged in substantial gainful activity from January 2014 until December 2014, *id.*, and determined that there had been a continuous twelve-month period during which plaintiff did not engage in substantial gainful activity.  R. at 18.  The ALJ stated that her remaining findings addressed the periods in which plaintiff did not engage in substantial gainful activity.  *Id.*

The ALJ found that plaintiff had the following severe impairments: seizure disorder, migraines, anxiety, panic attacks, and mild neurocognitive disorder.  *Id.*  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  R. at 19.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a full

2

range of work at all exertional levels, but with the following nonexertional limitations:

> the claimant may never climb ladders, ropes, and scaffolds.  She may never be exposed to hazardous conditions such as unprotected heights, moving mechanical parts, or operation of a motor vehicle.  She is able to meet the demands of competitive, remunerative, unskilled work, meaning that she is able to understand, remember, and carry out simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  Finally, the claimant may only rarely have work interactions with the general public.

R. at 21.  The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 26, but found that jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 27.

On July 11, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff alleges the following errors in the ALJ's decision: (1) factual errors; (2)

failure to follow the treating physician rule; (3) failure to consider all of plaintiff's

impairments individually and in combination at step two; (4) failure to properly consider

whether plaintiff's impairments made her disabled at step three; (5) failure to

adequately analyze plaintiff's pain, fatigue, and migraines at step four; and (6) flawed analysis that led to the ALJs determination that plaintiff could do several light, unskilled jobs.  Docket No. 17 at 2.

### A.  Factual Errors

Plaintiff alleges the ALJ made the following factual errors: (1) improperly calculating plaintiff's income levels and work history, *id.* at 5; (2) misstating plaintiff's age, using an artificially low number of seizures, and improperly concluding that plaintiff's seizures did not have an impact on plaintiff's physical functioning, *id.* at 5-7; (3) mischaracterizing Dr. Woodcock's statements regarding the effects of Lamictal on plaintiff's seizures, *id*; (4) citing outdated information as to plaintiff's activities, *id*. at 8; and (5) improperly using plaintiff's daily activities as evidence of work capabilities.  *Id*.

The Court first notes that "minor factual discrepancies . . . do not serve as a basis for reversal where . . . the ALJ's decision is otherwise supported by substantial evidence."  *Todorva v. Comm'r, SSA*, 762 F. App'x 510, 514 (10th Cir. 2019) (unpublished).  Plaintiff alleges that the ALJ improperly included in-kind traded services in plaintiff's income to find that it was substantial gainful employment ("SGA") from 2012–2013.  Docket No. 17 at 5.  However, the ALJ noted the in-kind service trading for 2014, a year that plaintiff acknowledges that she attained SGA.  R. at 17; Docket No. 17 at 5.  The ALJ did not conclude that plaintiff met SGA for 2012–2013, instead stating that "claimant's reported earnings from self-employment in 2012 and 2013 . . . are comparable to what she earned before the 2011 accident [].  Consequently, the undersigned does not accept the determination by the state agency that the claimant

was clearly not engaging in substantial gainful activity . . . ."  R. at 18.  The ALJ stated

that plaintiff engaged in SGA only from January 2014 to December 2014.  R. at 17.

Additionally, the ALJ found that there had been a continuous 12-month period during

which plaintiff did not engage in SGA, and the remaining decision addressed the

periods plaintiff did not engage in SGA.  R. at 18.  Error, if any, resulting from this

conclusion is therefore harmless.

Plaintiff was 48 years old at the time of onset of claimed disability and was 53

years old at the time of the ALJ decision, Docket No. 17 at 6; the ALJ found that plaintiff

was a younger person on the alleged disability onset date under 20 C.F.R. § 404.1563.

R. at 27.  Under section 404.1563, a "younger person" is age 45–49, and a "person

closely approaching advanced age" is age 50–54.  20 C.F.R. § 404.1563(c) and (d).

The ALJ found, however, that a subsequent change in age category would not produce

a different outcome under the Medical-Vocational Guidelines.  R. at 27.  The ALJ used

section 204.00 of the Medical-Vocation Guidelines, R. at 28, which states that "an

impairment which does not preclude heavy work . . . generally is sufficient for a finding

of not disabled, even though age . . . may be considered adverse."  20 C.F.R. § 404,

subpt. P, app. 2 § 204.00.  Plaintiff points to no evidence to contradict the ALJ's

conclusion that a change in age category would not change her outcome under the

nonexertional Medical-Vocational Guidelines, Docket No. 17 at 6, and the Court finds

the ALJ's determination supported by substantial evidence.

Plaintiff alleges that the ALJ made factual errors as to how many seizures she

had and that the ALJ improperly concluded that plaintiff's seizures did not have an

impact on her physical functioning.  *See* Docket No. 17 at 6-7.  The Court will address

these issues in Section IV.C, when it evaluates the weight the ALJ placed on testimony by plaintiff and her partner.

Plaintiff claims that the ALJ improperly stated that her neurologist, Dr. Woodcock, concluded that her seizures were controlled by Lamictal.  Docket No. 17 at 7-8.  The ALJ's decision states that "claimant's neurologist" made this conclusion, but cites to a report made by Dr. Pressman.  R. at 24 (citing Exhibit 22F/1, a report from plaintiff's November 14, 2016 visit with Dr. Pressman).  Plaintiff is correct that the ALJ refers to Dr. Woodcock, not Dr. Pressman, as "claimant's neurologist" throughout the decision.  *See* R. at 25.  However, this "minor factual discrepanc[y]" is harmless error since the ALJ's decision is otherwise supported by substantial evidence.  *Todorva*, 762 F. App'x at 514.  Additionally, plaintiff claims error in the ALJ's description of Dr. Pressman's statement regarding Lamictal.  Docket No. 17 at 7.  Because the record cited does, in fact, state that "Lamictal is controlling her symptoms," R. at 662, this argument fails.

Plaintiff lastly claims that the ALJ cited outdated information and improperly considered her hobbies and caregiving responsibilities as evidence of work capability without acknowledging evidence to the contrary in her decision.  Docket No. 17 at 8-9.  The ALJ considered evidence presented regarding the entire alleged period of disability.  While the ALJ did not specifically note that plaintiff no longer rides the bus because of panic attacks, the ALJ considered this piece of evidence in the context of plaintiff's ability to concentrate, persist, or maintain pace, and concluded that plaintiff had mild to moderate limitations.  R. at 20.  Similarly, the ALJ acknowledged that plaintiff could pay attention for two hours, but that she found it harder to focus for longer

8

periods of time.  *Id.*  The Court finds no error.

## B.  Step Two

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment or combination of impairments that is "severe."  20 C.F.R. § 404.1520(c).  A plaintiff seeking disability benefits must show that her inability to perform SGA results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521. An impairment is "severe" if it "significantly limits" a claimant's "physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), such as walking, standing, sitting, seeing, hearing, speaking, carrying out simple instructions, using judgment, responding appropriately to supervision or coping with changes in routine.  20 C.F.R. § 404.1522(b).

Plaintiff alleges that the ALJ failed to review all of plaintiff's impairments to determine if they were severe.  Docket No. 17 at 14.  Specifically, plaintiff alleges that the ALJ did not address depression, improperly concluded that plaintiff's degenerative disk disease was mild, and improperly grouped panic attacks and anxiety together for analysis.  *Id.*  Because the ALJ found that plaintiff had both severe anxiety and panic attacks, R. at 18, the Court rejects this portion of plaintiff's argument.

"Only 'acceptable medical sources' can provide evidence to establish the existence of a medically determinable impairment, only they can provide medical

opinions, and only they can be considered treating sources." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (internal citations omitted). Acceptable medical sources include, *inter alia*, licensed physicians (medical or osteopathic) and licensed psychologists. 20 C.F.R. § 404.1502.

Plaintiff cites to evidence of depression in reports by plaintiff's therapist and two reports by a nurse practitioner. Docket No. 17 at 14. Therapists are not acceptable medical sources; licensed advanced practice registered nurses can be acceptable medical sources for impairments within the scope of their licenses, but only for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7). Although plaintiff presents no acceptable medical sources to establish the existence of depression, there are notes by physicians regarding her depression in the record. *See, e.g.*, R. at 551. The evidence from plaintiff's therapist includes a statement that "Nancy reported experiencing debilitating seizures, anxiety, and depression, all of which severely impact her ability to work and drive." R. at 673. The therapist makes no endorsement of this self-reported opinion, and this statement alone is insufficient to show that her depression "significantly limits [her] ability to physical or mental ability to do basic work activities," as required by 20 C.F.R. § 404.1520(c). *Id.* Accordingly, the Court finds no error in the ALJ's decision.

The ALJ found that plaintiff's degenerative disk disease was mild based on a series of medical imaging and physical examinations that showed normal strength, coordination, sensation, and gait, and a full range of motion in her spine and extremities. R. at 18. Plaintiff claims that the ALJ determination is contradicted by a report by Dr. Michael Lin, Docket No. 17 at 14, who conducted imaging and made

findings regarding plaintiff's spine.  R. at 583.  The ALJ referenced this report in her decision, but not the portion pointed to by plaintiff alleging that her degenerative disk disease was moderate/severe at C5/6.  R. at 18.  Plaintiff does not dispute that physical examinations showed normal strength, coordination, sensation, gait, and a full range of motion in spine and extremities.  R. at 18.  Thus, the Court finds that the ALJ's determination that these musculoskeletal issues did not significantly limit her ability to do basic work-related activities was supported by substantial evidence.

Even if the ALJ erred at step two when she determined that plaintiff did not have a severe impairment of depression or degenerative disk disease, this error would have had little independent impact on the ultimate disability determination.  At step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521 and 404.1523, when we assess your residual functional capacity.").  "[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  Therefore, to the extent that the ALJ failed to consider all evidence of plaintiff's impairments, severe and otherwise, that error is better

addressed at step four, not at step two.  *See Dixon v. Astrue*, No. 08-cv-01879-PAB,

2010 WL 4853393, at *4 (D. Colo. Nov. 19, 2010).

### C.  Step Three

At step three the ALJ must determine whether plaintiff has an impairment or

combination of impairments that meets or equals an impairment listed in 20 C.F.R.

§ 404, subpt. P, app. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  Plaintiff argues that the ALJ

failed to do a combination analysis and to examine her migraines.  Docket No. 17 at 15.

Listed impairments are "conclusively presumed to be disabling."  *Lax v. Astrue*,

489 F.3d 1080, 1085 (10th Cir. 2007) (internal quotation marks omitted).  "For a

claimant to show that [her] impairment matches a listing, it must meet all of the

specified medical criteria.  An impairment that manifests only some of those criteria, no

matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An impairment is "equivalent" to a listed impairment if there are medical findings "at

least of equal medical significance to the required criteria."  20 C.F.R. § 416.926.

Plaintiff summarily asserts that the ALJ did not do a combination analysis,

despite the ALJ's statement to the contrary.  Docket No. 17 at 15; R. at 19.  Plaintiff

states that, because the ALJ mischaracterized her degenerative disk disease as mild

and did not include depression in her step two analysis, it was impossible for the ALJ to

do a combination analysis.  Docket No. 17 at 15.  Plaintiff cites no support for this

argument, and does not explain which listing the severity of her impairments meets or

equals.  *See Garrison v. Colvin*, 564 F. App'x 374, 377 (10th Cir. 2014) (unpublished)

("[T]he ALJ found at step two that those [impairments] were nonsevere, thus directing

the conclusion that they did not meet a listing at step three."). The Court finds that plaintiff's arguments concerning a combination analysis, her degenerative disk disease, and depression are unavailing. *See id.* (finding no error by the ALJ at step three where the claimant failed to state which listing or listings applied to his impairments).

Turning to migraines, plaintiff argues that the ALJ failed to consider whether her migraines met a listing. Docket No. 17 at 15. The Court notes that, although there is no separate listing for migraines, the Commissioner has stated in the past that the most analogous listing was section 11.03, which set forth criteria for non-convulsive epilepsy. *See* 20 C.F.R. § 404, subpt. P, app. 1, § 11.03; *see Thomas v. Colvin*, 69 F. Supp. 3d 1174, 1178 (D. Colo. 2014). On July 1, 2016, the SSA removed listing 11.03 and expanded listing 11.02 to include all seizure disorders. *See* Rules and Regulations, Social Security Administration, 81 F.R. 43048-01, 2016 WL 3551949 (July 1, 2016). This rule took effect on September 29, 2016. *Id.* The Commissioner "will apply the final rule to claims that are pending on or after the effective date." *Id.* Although the ALJ did not do a separate listing analysis concerning migraines, the ALJ evaluated plaintiff under section 11.02, and plaintiff has pointed to no evidence disregarded by the ALJ to show that her migraines met the criteria of section 11.02. Therefore, the Court finds no error in the ALJ's decision on this point.[3]

Plaintiff argues that the ALJ used an improperly low number of seizures to

---

[3] In 2019, the Commission issued SSR 19-4p, which explained that 11.02 was the most analogous listing for migraines. SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). While SSR 19-4p was not in effect at the time the ALJ's decision was issued, it lends support to the ALJ's decision to evaluate plaintiff's seizure disorders under section 11.02 without specifically naming migraines.

determine that she did not meet the criteria for a listing at step three.  Docket No. 17 at

6.  The ALJ noted that the medical evidence did not demonstrate the frequency that

plaintiff reported.  R. at 19.  The ALJ found that plaintiff's medically determinable

impairments could reasonably be expected to cause plaintiff's alleged symptoms;

however, plaintiff's claims regarding the intensity, persistence, and limiting factors were

not entirely consistent with the objective medical evidence and other evidence in the

record.  R. at 24.

     The framework for a claimant's statements about his or her symptoms is laid out

in 20 C.F.R. § 404.1529(c)(4):

> We will consider your statements about the intensity, persistence, and
> limiting effects of your symptoms, and we will evaluate your statements in
> relation to the objective medical evidence and other evidence, in reaching
> a conclusion as to whether you are disabled.  **We will consider whether
> there are any inconsistencies in the evidence and the extent to which
> there are any conflicts between your statements and the rest of the
> evidence,** including your history, the signs and laboratory findings, and
> statements by your medical sources or other persons about how your
> symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added).  "[I]f an individual's statements about the

intensity, persistence, and limiting effects of symptoms are inconsistent with the

objective medical evidence and the other evidence, we will determine that the

individual's symptoms are less likely to reduce his or her capacities to perform

work-related activities or abilities to function independently, appropriately, and

effectively in an age-appropriate manner."[4]  SSR 16-3p, 2016 WL 1119029, at *7 (Mar.

---

[4] At the time plaintiff filed for supplemental security income on March 30, 2015,
R. at 15, SSR 96-7p governed the Commissioner's analysis of a claimant's subjective
complaints.  *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996).  On March 26, 2016,
SSR 16-3p superseded SSR 96-7p and eliminated use of the term "credibility" and

16, 2016).  An ALJ is to consider the following factors relevant to a claimant's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

This Court's review of the ALJ's credibility determinations is guided by two principles.  First, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Second, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (alterations omitted).

The ALJ found that plaintiff's daily activities were inconsistent with the number of seizures and panic attacks that plaintiff claimed.  R. at 24.  The ALJ noted the that plaintiff reported varying numbers of seizures and that her work, particularly in child care, was incompatible with the number of reported seizures.  R. at 24.  The Court finds

---

provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *Makeen v. Berryhill*, No. 17-cv-02663-CMA, 2018 WL 3633560, at *8 (D. Colo. July 31, 2018).  Adjudicators are to apply SSR 16-3p when making determinations and decisions on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017).  The ALJ issued her decision on June 21, 2017, R. at 12, so SSR 16-3p governed the ALJ's analysis of plaintiff's subjective complaints. *See Makeen*, 2018 WL 3633560, at *8 (stating that ALJ's subjective complaint evaluation was governed by ruling in place at time of decision).

that the ALJ's determination is "closely and affirmatively linked to substantial evidence." *See Kepler*, 68 F.3d at 391.  Additionally, the medical evidence showed that plaintiff's spells were not epileptic and she was neurologically stable.  R. at 24.  A September 2016 electroencephalogram ("EEG") was abnormal, but a November 2016 EEG "showed no clear epileptiform activity," and Lamictal was controlling her symptoms.  R. at 24.

Plaintiff's partner, David Calvert, gave testimony that was cumulative of plaintiff's testimony concerning her limitations, which the ALJ explained why she was discounting. R. at 22.  While the ALJ did not specifically go through each of Mr. Calvert's claims, "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"  *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).  An ALJ is not required to make specific written findings of credibility if the written decision reflects that the ALJ considered the testimony.  *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006).  The ALJ gave a detailed description of Mr. Calvert's testimony, R. at 22, and the Court finds that the written decision reflects that the ALJ considered the testimony. The Court finds that the ALJ did not err by discounting plaintiff's reported number of seizures and finding that plaintiff did not meet the requisite number of seizures to qualify as disabled under 20 C.F.R. § 404, subpt. P, app. 1 § 11.02(A) or (B).

The ALJ then turned to sections 11.02(C) and (D), which allow a plaintiff to establish disability based on fewer seizures if plaintiff has generalized tonic-clonic seizures occurring at least once every two month for at least four consecutive months

16

despite adherence to a prescribed treatment plan, and a marked limitation of one of: (1) physical functioning; (2) understanding, remembering, or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself.  20 C.F.R. § 404, subpt. P, app. 1, § 11.02(C).  For dyscognitive seizures, the plaintiff must have them at least once every two weeks for at least three consecutive months despite adherence to a prescribed treatment plan, and a marked limitation of one of the five factors listed above.  *Id.* at § 11.02(D).

The ALJ also examined whether plaintiff met the criteria for being disabled under listing sections 12.02, neurocognitive disorders, and 12.06, anxiety-related disorders. R. at 19.  The ALJ found that plaintiff did not meet the criteria for either, but then proceeded to examine whether plaintiff met the less-restrictive criteria under "paragraph B" or "paragraph C."  *Id.*  Under paragraph B, the ALJ examined plaintiff's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404, subpt. P, app. 1, § 12.00(A)(2)(b).  To satisfy this criteria, plaintiff's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning.  *Id.*

The ALJ found that plaintiff had moderate limitations in understanding, remembering, or applying information; mild to moderate limitations in interacting with others; mild to moderate limitations in concentrating, persisting or maintaining pace; and mild limitations in adapting or managing onself.  R. at 20.  Because plaintiff did not have any "marked" limitations, the ALJ concluded that plaintiff did not meet the criteria for disabled under sections 11.02(C) and (D), or 12.02 and 12.06 paragraph B.  R. at

17

19-20.  The ALJ found that plaintiff was also not disabled under sections 12.02 or 12.06 paragraph C because she did not have a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both 1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder, and 2) marginal adjustment showing minimal capacity to adapt to changes in one's environment or to demands not already part of one's daily life.  *Id.*

Plaintiff claims that the ALJ ignored testimony from Mr. Calvert and plaintiff's son that "she does have these limitations," a statement from Dr. Woodcock that seizures prevent her from driving and other activities that require continuous attention, and evidence in the record about how she loses control of her body during her tonic-clonic seizures and is disoriented afterwards.  Docket No. 17 at 7.

Plaintiff has the burden to present evidence establishing that her impairments meet or equal listed impairments.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  The Court first notes that plaintiff's son did not testify, R. at 52; regarding Mr. Calvert, the Court has already determined that the ALJ properly discounted his testimony and therefore rejects this argument.  The ALJ assigned the referenced statement by Dr. Woodcock little weight, R. at 25, which the Court discusses below and finds to be proper.  Therefore, the statement is insufficient to establish that plaintiff meets this criteria.  Plaintiff argues that her references to descriptions of her seizures in the record establish that she "can't control herself physically, communicate, understand, etc."  Docket No. 17 at 7.  The ALJ gave detailed reasons for her conclusions regarding each limitation, and considered that plaintiff has short-term memory issues, especially

18

surrounding her seizures.  R. at 20.  The Court concludes that "the ALJ fulfilled [her] duty to explain the reasons for the adverse determination."  *Garrison*, 564 F. App'x at 377.

### D.  Step Four

Plaintiff alleges that the ALJ erred at step four by (1) failing to follow the treating physician rule, and (2) not considering her pain or fatigue when determining her RFC. Docket No. 17 at 2.

### *1.  Treating Physician Rule*

The ALJ must give consideration to all of the medical opinions in the record. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  The ALJ must also explain the weight she assigns to such opinions.  *Id.* (citations omitted).  The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship.[5]  20 C.F.R. § 404.1527(c)(2).

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  In the first step, the ALJ must consider whether the treating

---

[5] In 2017, the rules were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c.  Because plaintiff's claim was filed before March 27, 2017, the former regulations apply.  *See* 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from . . . treating sources.").

physician's opinion is entitled to controlling weight.  If the treating physician's opinion is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ]

will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996

WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second

step of the inquiry.  In the second step, "[t]reating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 CFR

[§§] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be

entitled to the greatest weight and should be adopted, even if it does not meet the test

for controlling weight."  SSR 96-2p, 1996 WL 374188, *4.   The factors that must be

applied in determining the proper weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c).

"[A]n ALJ must give good reasons for the weight assigned to a treating physician's

opinion, that are sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reason for

that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted).

### a. Dr. Woodcock

The ALJ gave great weight to the seizure precautions prescribed by Dr. Woodcock, such as prohibiting plaintiff from operating a motor vehicle and participating in potentially dangerous activities.  R. at 25.  Plaintiff claims that the ALJ failed to follow the treating physician rule by giving little weight to his opinion that work was stressful for plaintiff and increased the likelihood of her convulsions and ignoring another one of his statements.  Docket No. 17 at 11.  The ALJ gave little weight to this statement because she decided that whether or not plaintiff is disabled is a determination for the Commissioner and Dr. Woodcock's statement lacked specificity and was inconsistent with his notes.  R. at 25.

The ALJ provided sufficient support for her weighing of Dr. Woodcock's opinion. *Krauser*, 638 F.3d at 1330-31 ("[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." (internal quotation marks omitted)).

> A medical source opinion that an individual is 'disabled' or 'unable to work,' has an impairment(s) that meets or is equivalent in severity to the requirements of a listing, has a particular RFC, or that concerns the application of vocational factors, is an opinion on an issue reserved to the Commissioner.  Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source.

SSR 96-8p, 1996 WL 374184, at *7 n.8 (July 2, 1996).  Additionally, the ALJ discounted Dr. Woodcock's statement because it was inconsistent with his notes identifying

plaintiff's *commute*, not work, as her stressor, and observations that plaintiff became fatigued but nevertheless loved giving massages.  R. at 25.  While plaintiff may be correct that it is not inconsistent to love giving massages even though one becomes fatigued doing so, the other reasons identified by the ALJ are sufficient to show that her decision to discount Dr. Woodcock's statement is supported by substantial evidence.

Plaintiff claims that the ALJ erred by ignoring a different statement from Dr. Woodcock, contained in Exhibit 20F, which plaintiff alleges does not conclude or imply disability.  Docket No. 17 at 11.  However, the ALJ specifically stated that she gave that statement little weight because Dr. Woodcock stated that he did not believe plaintiff could return to work, which expressed an opinion on an issue reserved for the ALJ.  R. at 25 (referencing Exhibit 20F statement).  Moreover, plaintiff has not pointed to any specific evidence that would overwhelm the evidence relied upon by the ALJ.  *See Musgrave*, 966 F.2d at 1374.

### b.  Ashley Connolly, LPC

The ALJ gave little weight to the opinion of Ashley Connolly, LPC, plaintiff's therapist, because she was not an acceptable source for establishing impairments or rendering medical opinions.  R. at 26.  Plaintiff does not take issue with the ALJ not considering Ms. Connolly a medical source, instead arguing that this determination "doesn't mean [her] opinions and records can't be used at all."  Docket No. 17 at 11-12.  The ALJ gave reasons for discounting Ms. Connolly's statements, and even incorporated her observation that plaintiff's ability to drive was severely impacted into

the RFC because it was consistent with the record.  R. at 26.  Plaintiff's claim that the ALJ ignored Ms. Connolly's testimony is refuted by the ALJ's decision.

### c. Dr. Pressman, Dr. Black, Dr. Lin, Dr. Oglan, Laurilyn Baily, OT, Marina Kandova, NP, and Deborah Gothard, NP

Plaintiff contends that the ALJ failed to consider the opinions and records of a number of plaintiff's treating sources.  Docket No. 17 at 12.  The regulations require an ALJ to "consider all evidence in [the] case record when [making] a determination or decision whether [plaintiff is] disabled."  20 C.F.R. § 404.1520(a)(3).  To demonstrate compliance with this requirement, an ALJ need not discuss every piece of evidence in her decision, but must, at minimum, discuss "the evidence supporting [her] decision" and "the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Frantz*, 509 F.3d at 1302 (holding ALJ erred by ignoring evidence that would support disability finding while highlighting evidence favorable to finding no disability).

When an ALJ decides to disregard a medical report by a claimant's physician, she must set forth "specific, legitimate reasons" for her decision.  *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)) (further quotations omitted).  An ALJ's failure to discuss and weigh a medical source opinion is harmless error "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."  *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

There is no question that plaintiff has serious health limitations that clearly impact her life.  The question is whether the limitations are so great that plaintiff is permanently disabled.  *See Wilson v. Astrue,* 602 F.3d 1136, 1148 (10th Cir. 2010) (upholding ALJ decision that did not state an opinion on two reports by plaintiff's caregivers because "[t]here is nothing to show that the ALJ failed to properly consider these records," and neither record reached or supported a conclusion of disability).

Plaintiff alleges that the ALJ failed to consider evidence from Dr. Peter Pressman, and directs the Court to a report that the ALJ references.  Docket No. 17 at 12 (referring to R. at 666, which is Exhibit 22F).  While the ALJ did not mention Dr. Pressman by name, she considered the evidence Dr. Pressman provided.  R. at 24.  Similarly, plaintiff states that the ALJ ignored records from Dr. Sonya Black, her primary care physician, who noted that plaintiff had problems with anxiety and back pain and referred her to Dr. Lin.  Docket No. 17 at 12.  The evidence that plaintiff points to for this argument, however, is a report by Dr. Lin, Exhibits 9F/8 and 10F/2, that the ALJ referenced in her decision.  Docket No. 17 at 12; R. at 18.  While these exhibits show that Dr. Lin sent a carbon copy of his results to Dr. Black, they do not discuss any information sent from Dr. Black to Dr. Lin.  *See* R. at 583-85.  Plaintiff references a report by Dr. Black that states that plaintiff has seizures, Docket No. 17 at 12 (citing R. at 586), and certain portions of Dr. Black's reports contain references to plaintiff's anxiety.  *See, e.g.*, R. at 594.  However, the Court finds that nothing in these records undermines the ALJ's RFC finding.

Plaintiff claims that the ALJ ignored evidence from Dr. Anglund,[6] who treated her for back, neck, and hand pain, and also noted her seizures; Laurilyn Bailey, an occupational therapist who treated her right hand/wrists and who noted her loss of function to a marked degree; two nurse practitioners, who made notes detailing plaintiff's problems with cognition, panic attacks, seizures, problems with her hand, and referred her for anxiety treatment; and unnamed doctors and nurses, who treated plaintiff at the emergency room for seizures and panic attacks.  Docket No. 17 at 13.

The Court finds that none of these records contradict the ALJ's assessment of her RFC regarding plaintiff's seizures.

### 2.  Plaintiff's Nonsevere Impairments and RFC

At step two, the ALJ found that plaintiff's cervical degenerative disc disease was mild, plaintiff's right hand fracture did not meet the durational requirement for a severe impairment, and the December 2015 X-rays of plaintiff's hands and feet showed only mild or minimal degenerative disease changes.  R. at 18-19.  In the ALJ's RFC, she noted plaintiff's subjective allegations of diminished strength in her hands, driving restrictions due to seizures, fatigue from medication, brain injury, and neck and spine pain.  R. at 21.  Plaintiff alleges that the ALJ failed to adequately consider her nonsevere impairments of pain and fatigue when determining her RFC.  Docket No. 17 at 16-17.

---

[6] Plaintiff identifies the documents from R. at 557-82 as coming from Dr. Dana Ogland.  Docket No. 17 at 12.  The record indicates that the doctor's name is Dr. Dana Anglund.  *See, e.g.*, R. at 561 ("Signed electronically by: Dana Anglund, D.O.").  The Court will therefore refer to this doctor as Dr. Anglund.

The Court is guided by the Tenth Circuit's decision in *Wells v. Colvin* in analyzing nonsevere impairments at steps two and four.  727 F.3d 1061, 1065 (10th Cir. 2013). While *Wells* specifically dealt with nonsevere mental impairments, the court stated that the ALJ must "consider the combined impacts of all of the claimant's medically determinable impairments, *whether severe or not severe.*"  *Id.* (emphasis in original). Additionally, the court noted that "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id.*  The Commissioner claims that the ALJ's decision to not include musculoskeletal and pain limitations analysis in her RFC determination was reasonable because, under *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (unpublished), the Tenth Circuit found that error to do so was harmless where "the evidence . . . does not support assessing any functional limitations."  *Id*; Docket No. 18 at 19.  In *Alvey*, there were no records to indicate treatment by a mental practitioner, records from plaintiff's primary care physician indicated no significant mental issues, and records from close to the onset date contained few mentions of mental issues.  R. at 794-95.

In this case, plaintiff calls attention to records indicating diminished musculoskeletal function.  The ALJ found that "physical examinations of the claimant regularly show normal strength, coordination, sensation, normal gait, and full range of motion in the spine and extremities."  R. at 18.  However, the ALJ ignored the records of Dr. Anglund, who treated plaintiff from February 13, 2014 to July 16, 2014.  R. at 557-75.  On February 20, 2014, Dr. Anglund noted markedly decreased motion in the sacrum/pelvis during an osteopathic/neuromusculoskeletal exam and, in a March 13,

2014 evaluation, also noted decreased motion.  R. at 570, 564.  Similarly, the ALJ did

not consider the records of Laurilyn Bailey, OT, indicating loss of some function in

plaintiff's hand.  R. at 520.  While Bailey is not a physician and the records are from

2012, the ALJ is not permitted to "pick and choose among medical reports, using

portion of evidence favorable to his position while ignoring other evidence."  *Carpenter*,

537 F.3d at 1265 (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

 The Commissioner argues that any error from failing to consider plaintiff's

musculoskeletal impairment and pain in determining the RFC was harmless because

the ALJ's questions to the vocational expert included the limitation of light work.  Docket

No. 18 at 19.  The Commissioner cites to *Lane v. Colvin*, 643 F. App'x 766, 769 (10th

Cir. 2016) (unpublished), where the court found that, though the ALJ did not make clear

whether he considered limitations from plaintiff's physician in determining his RFC, the

error was harmless because the capacity to do the jobs identified by the ALJ was not

contrary to the limitations given by the physician.  *Id.*  The Court agrees with the

Commissioner that, because each job identified by the ALJ was only "light exertional

level," R. at 27, any error from the ALJ's failure to include plaintiff's musculoskeletal

limitations and pain in the RFC was harmless.  For the same reasons, the ALJ's failure

to discuss fatigue when determining plaintiff's RFC was harmless.

 Plaintiff does not specifically allege failure in the ALJ's decision at step four

regarding migraines, but because she claims that the ALJ failed to consider the effects

of absences at work due to migraines at step five, Docket No. 17 at 18, the Court will

consider it also at step four.  The ALJ asked the vocational expert what the effects of

having seizures at the work place would be, and the vocational expert testified that if

the seizures resulted in her being off task more than ten percent of the time, she would be unable to work.  R. at 51.  While not specifically naming migraines, this reflects that the ALJ adequately considered the effects that her symptoms could have on her ability to work due to absence.  *See Lane*, 643 F. App'x at 769.

### E.  Step Five

Plaintiff alleges that the ALJ's determination that she could perform light, unskilled work was error because (1) the ALJ stated that plaintiff was a younger worker, when, in fact, she aged out of that category during the pendency of her claim, and (2) the ALJ did not give any hypotheticals to the vocational expert that considered the effects of fatigue, pain, limitations from being a fall risk, and absenteeism due to migraines. Docket No. 17 at 18.  As discussed above, the ALJ considered whether plaintiff's change of age category would affect her outcome under the Medical-Vocational guidelines and determined it would not.  R. at 27.

The Court has already determined that the ALJ's determination of plaintiff's RFC due to seizures was proper and any error due to lack of consideration of fatigue, pain, and migraines was harmless.

Because the Court finds no reversible error with respect to the ALJ's RFC determination, there was no need for the ALJ to specifically identify the fatigue, pain, and migraine restrictions when questioning the vocational expert.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir.2000) (response to hypothetical question that included all limitations that ALJ ultimately included in his RFC assessment, but not all limitations claimed by the plaintiff, constituted substantial evidence for ALJ's disability decision);

*Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (stating that hypothetical to vocational expert "must include all (and only) those impairments borne out by the evidentiary record").

Finding that plaintiff has not demonstrated an error in the ALJ's decision, the Court will affirm.

## V.   CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner finding that plaintiff is not disabled is **AFFIRMED**.

DATED November 30, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge